■ CATHERINE SATALINO, Respondent, v MARTIN J. SATALINO, Appellant.—In an action for a divorce and ancillary relief, the defendant husband appeals from an order of the Supreme Court, Nassau County (Winick, J.), entered March 23, 1989, which, after a hearing, *inter alia,* found that New

York had jurisdiction to make a custody determination, granted that branch of the plaintiff wife's motion which was for temporary custody of the parties' child, ordered the child's immediate return to New York, and enjoined the parties from removing the child from New York without the court's permission.

Ordered that the order is modified, by deleting the provisions thereof which granted that branch of the plaintiff wife's motion which was for temporary custody of the parties' child, ordered his immediate return to New York, and enjoined his removal from New York without the court's permission, and substituting therefor a provision awarding temporary custody of the child to the father who resides in the State of Florida; as so modified, the order is affirmed, without costs or disbursements, and the matter is remitted to the Supreme Court, Nassau County, for further proceedings including an expedited plenary permanent custody hearing after forensic examinations have been concluded.

The parties were married in New York in 1982 and their only child, Matthew, was born on November 19, 1983. Marital difficulties developed, and the wife commenced the instant action for a divorce on the ground of cruel and inhuman treatment in January 1986 and sought custody of Matthew. The husband did not answer or appear, and a notice of inquest was filed on June 25, 1986. However, a judgment was never entered. The husband subsequently moved to vacate the default, claiming that there had been a reconciliation and that his wife had misled him by promising that the action would be discontinued. An immediate hearing was scheduled but when the wife failed to appear, the default was vacated and the husband was given 30 days to answer.

The husband began to seek drug and alcohol abuse treatment in 1987, and, in October 1987 he moved to Fort Myers, Florida, where his mother and siblings reside, and entered the Cloisters for in-patient substance abuse treatment from October 23, 1987 to December 4, 1987. He claims, without contradiction in this record, that he has not used alcohol or any addictive substances since October 1987 and that he regularly attends Alcoholics Anonymous meetings three times a week. He has also been continuously employed since December 1987.

Meanwhile, the wife and Matthew moved in with her parents in Franklin Square, Long Island. In April 1988 the wife was hospitalized for pelvic inflammatory disease, and because her parents both worked, she asked the husband to take care

of Matthew until she recuperated. With her consent, on April 18, 1988, the father took Matthew back to Florida with him, where the child has remained ever since. On April 21, 1988, the wife was discharged from the hospital and went to Florida where she stayed with the father and Matthew until the middle of May. The wife enrolled in a high school equivalency course with evening classes, and one evening she went out for drinks with some classmates and, according to her mother-in-law, returned home intoxicated. The parties argued and when the husband would not permit her to take Matthew out of his apartment, she left the State and returned to New York.

The wife claims that she made repeated attempts to contact her son but that these were thwarted by the husband and his family. On November 4, 1988, almost six months after leaving Florida without her son, and almost seven months after her son left New York for Florida, an order to show cause was signed on her motion for pendente lite custody in New York. In her motion she also sought child support, forensic examinations and restoration of the action to the Matrimonial Calendar. She claimed that her six-month delay in attempting to regain custody of her child was because she could not afford to retain a lawyer.

The husband was served with the order to show cause on November 10, 1988 in Florida. The husband commenced an action for divorce in Florida, and, on November 23, 1988, obtained an ex parte restraining order from a Florida Circuit Court Judge against Matthew's removal from the State. That order awarded him temporary custody of Matthew during the pendency of the Florida divorce action. In his affidavit, the father fully disclosed all of the New York proceedings and alleged that his wife is an alcohol abuser who refuses to seek treatment and that she has demonstrated an inability or unwillingness to care for their son.

In his answer to the wife's motion, the father detailed his present situation and care of Matthew. He is employed full time, has not used alcohol or drugs since October 1987 and has a housekeeper to take care of Matthew while he works. Matthew goes to kindergarten at a Lutheran school and sees his grandmother, aunt and uncle frequently. The husband contended that New York does not have subject matter jurisdiction to determine custody because Florida is the child's home State as defined in Domestic Relations Law § 75-d, and Florida is exercising jurisdiction. A hearing was held in the Supreme Court, Nassau County, at which the wife, the maternal grandfather and the paternal grandmother testified about

the parties' past relationship and current circumstances. During the hearing, the court communicated with the Judge in Florida who had issued the ex parte order, resulting in a decision by the Florida court to decline jurisdiction in favor of the New York court.

Since New York was the child's home State when the instant action for a divorce was commenced in 1986, jurisdiction lies in this State to determine his custody (Domestic Relations Law § 75-d [1] [a] [i]). Although Florida may have a colorable claim that it has subsequently become the child's home State, since Florida has declined to exercise its jurisdiction, clearly the courts of New York must do so (Domestic Relations Law § 75-g [1]).

The guiding principle in a child custody determination is the best interests of the child, and, while our review function is circumscribed by a general policy of deference to the hearing court's findings (see, Eschbach v Eschbach, 56 NY2d 167), such findings may be set aside when they lack a sound and substantial basis in the record and are contrary to the weight of the credible evidence (see, Matter of Gloria S. v Richard B., 80 AD2d 72, 76). We find from our review of the record in this matter that the decision herein to award temporary custody of the child to the mother is contrary to the weight of the evidence.

This award of temporary custody was made prior to the ordered forensic investigation and, in the absence of any emergency circumstances or danger to the child, stability of the home environment is an important consideration. There was no evidence presented at the hearing to support the finding that the child is currently living in a "hazardous" or "detrimental" environment with his father in Florida. The paternal grandmother candidly admitted in her testimony that she and her son are recovering alcoholics who have successfully completed in-patient treatment for alcohol abuse, no longer consume any alcohol, and regularly attend support meetings of Alcoholics Anonymous. This uncontradicted evidence does not in itself suggest that the child's environment is detrimental to his health or well-being, although it seems to have been the only basis for the court's decision. We also note that the mother's contention that the child is in a detrimental situation is undermined by her voluntary transfer of Matthew to the father in Florida and by her lengthy delay in seeking custody after her return from Florida.

On the other hand, the hearing court failed to give any

weight to clear indications that the mother may also have a history of drug and alcohol abuse which she is unwilling to acknowledge or for which she has not sought treatment. In this regard, it was an improvident exercise of discretion to refuse to grant even a one-day adjournment to the father's counsel in order to bring up from Florida the father's brother and sister. The offer of proof as to the content of these witnesses' testimony was that the mother was using alcohol and drugs. The proffered testimony might have "substantiated" the allegations of drug and alcohol abuse on the part of the mother, which the court specifically found were "unsubstantiated".

The child's present best interests will be served by awarding temporary custody to the father with whom the child has lived for the past year in what appears to be a stable, nurturing environment. We believe that a full forensic investigation of the parties' relative fitness and an expeditious plenary hearing on permanent custody are necessary before the current custody situation is altered, and we see no compelling reason to disrupt the child's life at this time. Rubin, J. P., Spatt, Harwood and Rosenblatt, JJ., concur.