OPINION OF THE COURT
Jasen, J.
The question to be resolved on this appeal is whether custody of the youngest child of the parties herein should be changed, along with that of her two older sisters, from her mother to her father.
Plaintiff, Donald Eschbach, and defendant, Rita Eschbach, were married on November 23, 1963. Donald Eschbach was granted a divorce on May 28,1979 on the basis of the couple having lived separate and apart pursuant to a separation agreement for one year. (Domestic Relations Law, § 170, subd [5].) Custody of the three daughters of the marriage was granted to their mother pursuant to an oral stipulation of the parties entered in the minutes of the court at the inquest hearing held on January 16,1979. The stipulation, which also provided visitation rights for the children’s father, was incorporated but not merged in the judgment of divorce.
Events over the course of the next year indicated a progressive deterioration in the mother’s relationship with her daughters. On several occasions, the two older girls, Karen and Ellen, ran away from defendant’s home, either to their father’s residence or to friends’ homes. The record also reveals that the mother refused to allow the girls to participate in extracurricular activities at school and imposed severe limitations on what activities they could *170 participate in and with whom they were allowed to associate. Concerned that the children were being raised in an unhealthy atmosphere which was affecting their emotional and psychological development, the father commenced this action seeking a modification of the judgment of divorce to the extent of awarding him custody of his three daughters.
The trial court took testimony from both parents, representatives of the school, and the two older daughters. Although the youngest daughter, Laura, did not testify, she was interviewed by the court in camera, and a transcript of that proceeding is included in the record before us. Additionally, a report was prepared for the court by a probation officer who had interviewed the parties.
The trial court found that the mother’s unreasonable demands and restrictions were jeopardizing the older daughters’ emotional and intellectual -development and that there was a total breakdown of communication between the older children and their mother. Furthermore, the court found that the strong prefrence to live with their father expressed by these children, who were' age 16 and 14 at the time of the hearing, should be given consideration.
Although Laura, who was 10 at the time of the hearing, had not expressed a similarly strong preference to live with her father rather than her mother, the court recognized her strong desire to remain with her sisters. After considering all the factors presented, the court found that her best interests would be served by continuing her close relationship with her sisters and that a change of custody to her father was necessary under these circumstances.
On appeal, the Appellate Division agreed that “the antagonism [of the older] children * * * toward defendant and their strong preference to live with plaintiff” (83 AD2d 845, 846) required a change in custody for Karen and Ellen. That court, however, modified the judgment and ordered that Laura’s custody remain with the mother because there was “nothing to suggest that defendant has been anything but a fit parent toward her.” (Id.)
On this appeal, the father seeks custody of Laura. The mother has not sought a further appeal from that part of the order which affirmed the judgment awarding custody *171 of Karen and Ellen to the plaintiff. The question on this appeal is thus limited to which parent should have custody of Laura. We agree with the trial court that Laura’s best interests require a change in her custody from her mother to her father.
Any court in considering questions of child custody must make every effort to determine “what is for the best interest of the child, and what will best promote its welfare and happiness”. (Domestic Relations Law, § 70; Matter of Ebert v Ebert, 38 NY2d 700, 702; Obey v Degling, 37 NY2d 768, 769; Matter of Lincoln v Lincoln, 24 NY2d 270; Bistany v Bistany, 66 AD2d 1026; Sandman v Sandman, 64 AD2d 698, mot for lv to app den 46 NY2d 705; Matter of Saunders v Saunders, 60 AD2d 701.) As we have recently stated, there are no absolutes in making these determinations; rather, there are policies designed not to bind the courts, but to guide them in determining what is in the best interests of the child. (Friederwitzer v Friederwitzer, 55 NY2d 89, 93-95.)
Where the parties have entered into an agreement as to which parent should have custody, we have stated that “[pjriority, not as an absolute but as a weighty factor, should, in the absence of extraordinary circumstances, be accorded” to that agreement. (Matter of Nehra v Uhlar, 43 NY2d 242, 251.) This priority is afforded the first determination of custody in the belief the stability this policy will assure in the child’s life is in the child’s best interests. (Friederwitzer v Friederwitzer, supra, at p 94; Corradino v Corradino, 48 NY2d 894; Matter of Nehra v Uhlar, supra; Obey v Degling, supra; Dintruff v McGreevy, 34 NY2d 887; Aberbach v Aberbach, 33 NY2d 592; People ex rel. Selbert v Selbert, 60 AD2d 692.) But as this court noted in Friederwitzer, “[n]o agreement of the parties can bind the court to a disposition other than that which a weighing of all the factors involved shows to be in the child’s best interests (People ex rel. Wasserberger v Wasserberger, 42 AD2d 93, 95, affd on opn below 34 NY2d 660).” (Friederwitzer v Friederwitzer, supra, at p 95.) Thus, an agreement between the parties is but one factor to be weighed by the court in deciding whether a change of custody is warranted.
*172 The weight to be given the existence of a prior agreement depends on whether the prior disposition resulted from a full hearing by a trial court or was merely incorporated in the court’s judgment pursuant to an uncontested stipulation. (Friederwitzer v Friederwitzer, supra, at pp 94-95.) This is particularly true where, as in this case, the rules of the court require that the decree specify that “as to support, custody and visitation, no such agreement or stipulation is binding” (22 NYCRR 699.9 [f] [4]) and that the court retains jurisdiction for the purpose of making such further custody decree “as it finds appropriate under the circumstances existing at the time application for that purpose is made to it”. (22 NYCRR 699.9, Approved Forms, J13.) Since the court was not bound by the existence of the prior agreement, it has the discretion to order custody changed “when the totality of circumstances, including the existence of the prior award, warrants its doing so in the best interests of the child.” (Friederwitzer v Friederwitzer, supra, at p 96.)
Primary among those circumstances to be considered is the quality of the home environment and the parental guidance the custodial parent provides for the child. (Matter of Ebert v Ebert, 38 NY2d 700, 702, supra; Bistany v Bistany, 66 AD2d 1026, supra; Sandman v Sandman, 64 AD2d 698, mot for lv to app den 46 NY2d 705, supra; Matter of Saunders v Saunders, 60 AD2d 701, supra.) While concerns such as the financial status and the ability of each parent to provide for the child should not be overlooked by the court, an equally valid concern is the ability of each parent to provide for the child’s emotional and intellectual development. (Sandman v Sandman, supra; Porges v Porges, 63 AD2d 712; Matter of Saunders v Saunders, supra.)
In determining whether the custodial parent can continue to provide for the child’s various needs, the court must be cognizant of the individual needs of each child. It is, of course, entirely possible that a circumstance such as a total breakdown in communication between a parent and child that would require a change in custody would be applicable only as to the best interests of one of several children. (Bistany v Bistany, supra; Sandman v Sandman, *173 supra; Porges v Porges, supra.) To this end, it is important for the court to consider the desires of each child. But again, this is but one factor to be considered; as with the other factors, the child’s desires should not be considered determinative. (Matter of Ebert v Ebert, supra, at p 702; Obey v Degling, 37 NY2d 768, 770, supra; Dintruff v McGreevy, 34 NY2d 887, 888, supra; Sandman v Sandman, supra.) While not determinative, the child’s expressed preference is some indication of what is in the child’s best interests. Of course, in weighing this factor, the court must consider the age and maturity of the child and the potential for influence having been exerted on the child. (See, e.g., Obey v Degling, supra, at p 770; Dintruff v McGreevy, supra, at p 888.)
Finally, this court has long recognized that it is often in the child’s best interests to continue to live with his siblings. While this, too, is not an absolute, the stability and companionship to be gained from keeping the children together is an important factor for the court to consider. “Close familial relationships are much to be encouraged.” (Matter of Ebert v Ebert, supra, at p 704.) “Young brothers and sisters need each other’s strengths and association in their everyday and often common experiences, and to separate them, unnecessarily, is likely to be traumatic and harmful.” (Obey v Degling, supra, at p 771; Matter of Gunderud v Gunderud, 75 AD2d 691; Bistany v Bistany, supra.)
The weighing of these various factors requires an evaluation of the testimony, character and sincerity of all the parties involved in this type of dispute. Generally, such an evaluation can best be made by the trial court which has direct access to the parties and can supplement that information with whatever professionally prepared reports are necessary. “In matters of this character ‘the findings of the nisi prius court must be accorded the greatest respect’ (Matter of Irene O., 38 NY2d 776, 777)” (Matter of Ebert v Ebert, supra, at p 703; Bistany v Bistany, supra). Appellate courts should be reluctant to substitute their own evaluation of these subjective factors for that of the nisi prius court (People ex rel. Portnoy v Strasser, 303 NY 539, 542; Bistany v Bistany, supra), and if they do, should articulate *174 the reasons for so doing. Similarly, the existence or absence of any one factor cannot be determinative on appellate review since the court is to consider the totality of the circumstances. (Friederwitzer v Friederwitzer, 55 NY2d 89, supra.)
Turning then to the facts of this case, we hold that the determination of the trial court that the totality of the circumstances warrants awarding custody of Laura to her father conforms to the weight of the evidence. The record indicates that although the mother is not an unfit parent for Laura, she is, under all the circumstances present here, the less fit parent. Thus, the trial court was not bound by the stipulation of the parties-, but was free to, and indeed required to, review the totality of the circumstances to determine what would be in Laura’s best interests. In doing so, the Trial Judge weighed the testimony of all the parties, including Laura, and considered the testimony of school officials and reports from a probation officer appointed by the court. The court made no specific finding that defendant was an unfit mother for Laura, but a finding that the mother was the less fit parent is implicit in its order to change custody and is supported by the record. Additionally, the trial court, while noting Laura’s ambivalence as to which parent she would prefer to live with, gave significant weight to her strong desire to remain with her older sisters. The record indicates that all relevant factors, including the mother’s ability to cope with raising children as they approach maturity and the father’s desire to- provide a fuller and more enriched environment for his daughters were considered. It is abundantly clear from the record that the trial court, in this case, made a careful and studied review of all the relevant factors. As the determination of the nisi prius court, we believe this holding should be accorded great deference on review.
Accordingly, the order of the Appellate Division should be reversed, without costs, and the judgment of Supreme Court, Westchester County, reinstated.
Chief Judge Cooke and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
Order reversed, etc.